# In the United States Court of Appeals
## for the Eighth Circuit

_____

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.,

*Plaintiff,*

IOWA CITIZENS FOR COMMUNITY IMPROVEMENT,

*Plaintiff-Appellant,*

v.

KIM REYNOLDS, in her official capacity as Governor of Iowa, BRENNA BIRD, in her official capacity as Attorney General of Iowa, VANESSA STRAZDAS, in her official capacity as Cass County Attorney, JEANNINE RITCHIE, in her official capacity as Dallas County Attorney, and NATHAN REPP, in his official capacity as Washington County Attorney,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Southern District of Iowa

_____

## REPLY OF APPELLANT

_____

David S. Muraskin
FarmSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(267) 761-8448
david@farmstand.org

Holly Bainbridge
FarmSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(202) 595-8816
holly@farmstand.org

*Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

I.   INTRODUCTION. ................................................................................1

II.  ICCI HAS STANDING AND A RIPE CLAIM. ............................................4

   A.   Defendants' jurisdictional arguments violate the law of the case. .............4

   B.   ICCI has standing. ...................................................................6

   C.   ICCI has a ripe claim...............................................................8

III. SECTION 727.8A RESTRICTS ICCI'S PROTECTED SPEECH. .............10

   A.   ICCI's recordings are protected speech and predicates to speech. ............11

   B.   ICCI's speech does not fall in an exception to the First Amendment. ......13

IV.  SECTION 727.8A'S APPLICATIONS FAIL SCRUTINY BECAUSE RESTRICTING ICCI'S SPEECH DOES NOT ADVANCE THE LAW'S ENDS. ....................................................................................16

   A.   The prior facial decision did not resolve tailoring. ..................................17

   B.   Section 727.8A's challenged applications are not tailored........................18

V.   SECTION 727.8A'S APPLICTIONS FAIL SCRUTINY BECAUSE THE STATE DID NOT PRODUCE EVIDENCE THE LAW WAS WARRANTED. ..23

VI.  AT THE LEAST, REMAND IS REQUIRED. .............................................26

VII. CONCLUSION................................................................................27

i

Appellate Case: 25-1750   Page: 2   Date Filed: 09/18/2025 Entry ID: 5559239

# <u>TABLE OF AUTHORITIES</u>

## Cases

*ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) .................................... 12, 22

*Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963 (8th Cir. 2016) ..........................3, 7

*Animal Legal Def. Fund v. Herbert*, 263 F. Supp. 3d 1193 (D. Utah 2017)...........16

*Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219 (10th Cir. 2021)................. 4, 14, 15

*Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781(8th Cir. 2021)..........................16

*Animal Legal Def. Fund v. Reynolds*,
   89 F.4th 1071 (8th Cir. 2024) ................................. 1, 3, 5, 7, 8, 17, 18, 19, 22, 27

*Animal Legal Def. Fund v. Vaught*, 8 F.4th 714 (8th Cir. 2021)...................... 5, 6, 7

*Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018).......................11

*Ass'n of Cmty. Orgs. for Reform Now v. St. Louis County*, 930 F.2d 591 (8th Cir.
   1991) ..............................................................................................................24

*Barilla v. City of Houston*, 13 F.4th 427 (5th Cir. 2021)..........................................6

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011).................................................12

*Citizen Ctr. v. Gessler*, 770 F.3d 900 (10th Cir. 2014)..............................................7

*Citizens United v. FEC*, 558 U.S. 310 (2010).....................................................6, 12

*Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022).........................................1, 19

*Doe v. City of Minneapolis*, 898 F.2d 612 (8th Cir. 1990)......................................24

*Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006) ....................................................9

*Houchins v. KQED, Inc.*, 438 U.S. 1 (1978).................................................... 18, 19

*Initiative & Referendum Inst. v. Walker*,
   450 F.3d 1082 (10th Cir. 2006) ............................................................. 3, 6, 7, 8, 9

Appellate Case: 25-1750    Page: 3    Date Filed: 09/18/2025 Entry ID: 5559239

*Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576 (8th Cir. 2013) ................9

*Jake's, Ltd., Inc. v. City of Coates*, 284 F.3d 884 (8th Cir. 2002)..........................24

*McCullen v. Coakley*, 573 U.S. 464 (2014)............................................... 23, 25, 26

*Minn. RFL Republican Farmer Lab. Caucus v. Moriarty*, 108 F.4th 1035 (8th Cir. 2024) ...............................................................................................................6

*Mo. Republican Party v. Lamb*, 270 F.3d 567 (8th Cir. 2001)......................... 24, 25

*Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770 (5th Cir. 2024) ..........14

*Ness v. City of Bloomington*, 11 F.4th 914 (8th Cir. 2021) .......................... 3, 12, 13

*Par v. Wolfe Clinic, P.C.*, 70 F.4th 441 (8th Cir. 2023) .....................................2, 10

*People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815 (4th Cir. 2023) ................................................................ 4, 13, 15, 22

*Phelps-Roper v. Koster*, 713 F.3d 942 (8th Cir. 2013).............................................1

*Pratt v. Helms*, 73 F.4th 592 (8th Cir. 2023).........................................................8

*Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2020) ...............9, 20

*Project Veritas v. Schmidt*, 125 F.4th 929 (9th Cir. 2025) .............................. 21, 27

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ......................................................27

*Rice v. Kempker*, 374 F.3d 675 (8th Cir. 2004)....................................................22

*Sisney v. Kaemingk*, 15 F.4th 1181 (8th Cir. 2021)...............................................25

*Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019) .................. 3, 11, 12

*TikTok Inc. v. Garland*, 604 U.S. 56 (2025) ............................................... 16, 24, 25

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994) ............................... 18, 22

*United States v. Long*, 797 F.3d 558 (8th Cir. 2015)..............................................23

*W. Watersheds Project v. Michael*, 869 F.3d 1189 (10th Cir. 2017) .....................15

iii

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150 (2002) ....................................................................................................................14

**Statutes**

Iowa Code § 716.7(2).........................................................................................20

iv

Appellate Case: 25-1750     Page: 5     Date Filed: 09/18/2025 Entry ID: 5559239

## I.    INTRODUCTION.

This case concerns whether Iowa Code § 727.8A can be constitutionally applied to ICCI and its members when they refuse to physically vacate land (a trespass) because they record those protests, even though the landowners do not object to the recordings. *See* Defs.' Br. 11, 19, 46. ICCI only seeks to protect those activities at locations otherwise open to the public. *See* Defs.' Br. 19–20.

Recordings like ICCI's, designed to capture statements so they can be communicated to others, *see* App.091–92; R. Doc. 69-1 at ¶¶ 12–13, 16–17, are protected speech. Therefore, even under the lowest potentially applicable level of scrutiny, intermediate scrutiny, it was Defendants' burden to justify these applications of § 727.8A. *Phelps-Roper v. Koster*, 713 F.3d 942, 949 (8th Cir. 2013).

Yet, Defendants offer nothing to show the applications are tailored. They repeatedly turn to this Court's decision upholding § 727.8A facially, *e.g.*, Defs.' Br. 40–42, when that decision disclaimed it was addressing as-applied issues, *Animal Legal Def. Fund v. Reynolds ("Reynolds")*, 89 F.4th 1071, 1080 (8th Cir. 2024) ("[W]e do not . . . examine how the Act applies to a plaintiff's particular circumstances."). They also demand that the Court defer to their judgment, Defs.' Br. 44–45, when that is wholly inconsistent with intermediate scrutiny, *Cornelio v. Connecticut*, 32 F.4th 160, 177 (2d Cir. 2022).

1

Appellate Case: 25-1750    Page: 6    Date Filed: 09/18/2025 Entry ID: 5559239

This is because, as a matter of law and logic, their rationale for the law—to protect privacy and property—is not achieved by regulating unobjected-to recordings in open areas. Moreover, Defendants acknowledge they need "evidence" showing §727.8A was necessary, but only point to two articles they unearthed from the internet during this litigation, Defs.' Br. 51, 56–57—articles that do not identify any harm from the recordings and concerned recording on *closed* property. Defendants' tailoring argument is equivalent to saying the state can enforce a noise ordinance against protests anywhere, if its briefing cites a blog recounting a protest near a hospital, and even though the blog, facts, and background rules do not suggest the regulated noise level is disruptive.

Therefore, the opposition works to distract. Defendants and their amici (baselessly) imply ICCI protests at different locations or in different ways, Defs.' Br. 46; *e.g.*, Amicus Br. 10–11, 14, and Defendants state that the Court requires further "guidance" about the locations at issue here, Defs.' Br. 19. The former is irrelevant. ICCI does not seek relief covering such protests. Regarding the latter, Defendants fail to present any way additional details would influence the outcome. Even if Defendants did, that is not a basis for affirmance. It is error to dismiss a case when the outcome turns on yet to be developed facts. *Par v. Wolfe Clinic, P.C.*, 70 F.4th 441, 446 (8th Cir. 2023).

2

Defendants also insist ICCI lacks standing and ripe claims, Defs.' Br. 15–23, when the Court already explained what is required for both, *Reynolds*, 89 F.4th at 1077–79, and Defendants do not dispute ICCI makes those showings. Instead, Defendants repeat their previously rejected arguments that (i) this Court lacks jurisdiction if Defendants contest the viability of ICCI's First Amendment claim, and (ii) ICCI's failure to describe specific plans to violate § 727.8A renders its challenge unripe. But Defendants cannot rely on merits disputes to contest jurisdiction, *e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016), and it is well-established courts must evaluate a law that chills speech precisely because it keeps people from developing specific plans to speak, *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc) (Defendants' authority).

In addition, Defendants ask this Court to subvert its holdings that recordings like ICCI's amount to protected speech, *Ness v. City of Bloomington*, 11 F.4th 914 (8th Cir. 2021); *Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019). Defs.' Br. 23–32. Defendants distinguish *Telescope* based on verifiably false assertions and suggest two never-before-heard-of-exceptions to the First Amendment. They imply the government can freely regulate speech on private property, and can criminalize speech so long as another element of the law targets regulatable criminal conduct. In other words, Iowa is free to punish debates at the

3

dinner table, and speeding with a bumper sticker. Courts have repeatedly rejected these authoritarian daydreams, including where speakers trespass. *E.g.*, *People for the Ethical Treatment of Animals, Inc. ("PETA") v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 822–26 (4th Cir. 2023); *Animal Legal Def. Fund v. Kelly ("Kelly")*, 9 F.4th 1219, 1237–38 (10th Cir. 2021) (Defendants' authority).

Thus, even under intermediate scrutiny, Defendants were obligated to demonstrate they had factual support showing the need to punish recordings like ICCI's, and explain how that actually protects property and privacy. Defendants predictably cannot demonstrate restricting recordings people accept without disagreement is necessary. The challenged applications of § 727.8A cannot stand. And, even were the court to reject all of that, reversal is still required so ICCI can pursue that strict scrutiny is warranted.

## II.   ICCI HAS STANDING AND A RIPE CLAIM.

Defendants' standing and ripeness arguments are irreconcilable with this Court's precedent, including its prior decision in this matter. The law is clear. A prohibition enforceable by defendants that chills a plaintiff's allegedly protected speech presents a ripe Article III dispute.

### A. Defendants' jurisdictional arguments violate the law of the case.

This Court need not look beyond its prior decision in this matter to reject Defendants' standing and ripeness arguments. There this Court explained ICCI

4

could seek to enjoin Defendants' use of § 727.8A if ICCI had "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Reynolds*, 89 F.4th at 1077. ICCI alleged sufficient facts to meet that test by explaining it and its members had in the past "travel[ed] to spaces generally open to the public," "protest[ed]," "refus[ed] to leave" resulting in "arrest[] for trespass[]," "intentionally record[ed] themselves" in these activities, and the law now "chills" equivalent activities. *Id.* at 1078. This also established "the ripeness requirement," because where a party alleges a chill on speech, "standing and ripeness issues boil down to the same question." *Id.* at 1078–79 (cleaned up) (quoting *Animal Legal Def. Fund v. Vaught ("Vaught")*, 8 F.4th 714, 721 n.* (8th Cir. 2021)).

Defendants rightly do not dispute that ICCI has now proven those facts. *See* Defs.' Br. 18. In other words, the record is precisely what this Court stated would establish standing and ripeness. *See, e.g.*, Plf.'s Opening Br. 14–17 (detailing declarations establishing standing).

Defendants assert this law of the case is not binding because ICCI's first appeal concerned facial relief and this appeal seeks as-applied relief. But what plaintiffs must establish for standing is unaffected by the potential remedy. "[T]he distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens*

5

*United v. FEC*, 558 U.S. 310, 331 (2010). Because it does not impact plaintiffs' needed allegations, "the facial-versus-as-applied distinction" cannot "affect [the] standing inquiry." *Barilla v. City of Houston*, 13 F.4th 427, 432 n.3 (5th Cir. 2021) (citing *Citizens United*, 558 U.S. at 331).

That ICCI satisfied this Court's requirements for standing and ripeness resolves those issues regardless of Defendants' disagreement with the prior result. *See Minn. RFL Republican Farmer Lab. Caucus v. Moriarty*, 108 F.4th 1035, 1038 (8th Cir. 2024) (where parties have "not presented evidence materially different from what" underlay the prior ruling, "the law of the case doctrine governs").

### B. ICCI has standing.

If the Court wants to again dig into standing, the result is the same. This Court has explained that where an organization "in the past conducted" activities that fall within the statute, "wish[es] to continue" those activities, and states it is prepared to do so "but for the[] fear of liability" under the statute that is enforceable by defendants, then it has established an "injury in fact and jurisdiction." *Vaught*, 8 F.4th at 719–20. The "allegations of previous success lend 'concreteness and specificity to the plaintiffs' claims'" that they could be prosecuted under the law and are reasonably chilled by it, so the court can evaluate the constitutionality of the statute. *Id.*; *Initiative & Referendum Inst.*, 450 F.3d at 1089 (same). Therefore, it is sufficient that ICCI and its members explained they want to protest in the manners

6

they detail they have in the past, but will not do so because of Defendants' ability to enforce § 727.8A. *See* Plf.'s Opening Br. 14–17.

Defendants suggest that because an injury must relate to a "'legally . . . cognizable' interest" and "trespass is illegal," ICCI cannot raise First Amendment arguments against § 727.8A. Defs.' Br. 21. But asking the Court to assume ICCI will fail in its argument that § 727.8A's prohibition on recording subjects the law to First Amendment review is the exact opposite of what is required. "In assessing a plaintiff's Article III standing, [courts] must 'assume that on the merits the plaintiffs would be successful in their claims.'" *Am. Farm Bureau Fed'n*, 836 F.3d at 968; *see also Vaught*, 8 F.4th at 721.

Defendants' own First Amendment authority explains that so long as plaintiffs have "alleg[ed] an injury to a protected right *such as free speech*," that is a cognizable claim for standing. *Initiative & Referendum Inst.*, 450 F.3d at 1093 (emphasis added); *see also Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014) (relying on *Initiative & Referendum Inst.*, 450 F.3d at 1093). Accordingly, this Court has held plaintiffs can raise First Amendment claims when a statute allegedly restricts speech alongside otherwise illegal conduct. *E.g.*, *Reynolds*, 89 F.4th at 1076 (First Amendment challenge to § 727.8A "*legally cognizable*"); *Vaught*, 8 F.4th at 717–18 (plaintiffs had standing to challenge law prohibiting recording following "unauthorized access to property").

7

Defendants' cases from outside the First Amendment context explain plaintiffs only lack standing if their claims do not fall within any *theoretical* right. *E.g.*, *Pratt v. Helms*, 73 F.4th 592, 594 (8th Cir. 2023) (no "standing to challenge the failure to investigate" as the courts have explained "crime victims have no constitutional right to have their assailants prosecuted").

Defendants also argue ICCI and its members cannot be injured because, even if § 727.8A is unconstitutional, violators could still be punished for trespass, *see* Defs.' Br. 22, but that too is wrong. A plaintiff can challenge a law that imposes "a discrete injury" even if the suit would "not relieve them of every injury." *Reynolds*, 89 F.4th at 1078. Section 727.8A imposes much "steeper penalties" than Iowa's traditional trespass law, *id.* at 1075, and ICCI and its members explain those additional penalties are what is causing the chilling effect, *see*, *e.g.*, App.093–96; R. Doc. 69-1 ¶¶ 19–28. This suit will not only alleviate an injury, it will alleviate the entirety of the speech injury. Defendants cannot avoid accountability.

### C. ICCI has a ripe claim.

Expanding on ripeness, the case law makes clear Defendants' suggestion a ripe claim must explain the "specific" way the plaintiff "intends to violate the law," Defs.' Br. 20, "cannot be right," *Initiative & Referendum Inst.*, 450 F.3d at 1089. "It makes no sense to require plaintiffs simultaneously to say 'this statute presently chills me from engaging in XYZ speech,' and 'I have specific plans to engage in

8

XYZ speech next Tuesday.'" *Id.*; *see supra* (evidence ICCI had previously engaged in activities concretized dispute).

Defendants' additional authority says nothing different. *Iowa Right to Life Committee, Inc. v. Tooker* explained the plaintiff could not challenge a law where it did not establish it had or would ever "risk[] a criminal enforcement action by disobeying" the statute. 717 F.3d 576, 587 (8th Cir. 2013). Similarly, *Elend v. Basham* concluded the plaintiffs could not proceed because they "have not asserted that they" engaged in the regulated conduct except on one out-of-date occasion, so it was unclear whether they would engage in similar activities in their future and thus could claim a chill on their speech. 471 F.3d 1199, 1209 (11th Cir. 2006). *Project Veritas Action Fund v. Rollins* held that Project Veritas' request for as-applied relief was not ripe because the relief was not "congruent in scope" to the activities that were chilled. 982 F.3d 813, 841 (1st Cir. 2020). If the relief requested was merely "coextensive with the plaintiff's [] plans"—which the court characterized as "record[ing] 'newsworthy' content 'in which the public has a legitimate concern'"—Project Veritas could have proceeded, but it could not seek relief broader than necessary to accomplish its work. *Id.* at 841–42. Defendants' authority holds plaintiffs can only seek as-applied relief to remedy their chill. ICCI established a chill on its speech, *see supra*, and seeks relief that entirely overlaps

9

with that chill. In fact, ICCI seeks relief equivalent to the relief *Project Veritas* endorses.

Defendants' complaints about the number of locations ICCI would be protected if it prevails, Defs.' Br. 19–20, are not even appropriate merits arguments. The state is not entitled to some constitutional violations because it is compelled to abide by the First Amendment elsewhere. Defendants' statement that ICCI's as-applied relief is "all but facial," Defs.' Br. 19, proves the argument is window dressing. Defendants' amici discuss numerous other locations in which trespass and recording occurs and is distinctly problematic, and Defendants indicate part of their concern with relief here is it will encourage other types of actions.

If Defendants contended certain specifics about ICCI's activities could undermine the First Amendment arguments (they did not), *see* Defs.' Br. 20, that might have narrowed the ultimate relief. But it is not a basis for the dismissal Defendants were granted. Rather it calls for fact development and then an application of the law to those facts. *See Par*, 70 F.4th at 446.

## III. SECTION 727.8A RESTRICTS ICCI'S PROTECTED SPEECH.

Defendants' assertion that § 727.8A's prohibition on ICCI and its members making recordings does not infringe on protected speech is inconsistent with two lines of authority. This Court protects recordings made to capture a message because such recordings are pure speech. Separately, this Court explains that when a recorder

10

will use the recording for social media, the act of recording is a predicate to speech, which must be protected as speech. ICCI's recordings meet both tests. Despite Defendants' wishes, the circuits and Supreme Court are also uniform in holding the First Amendment continues to protect speech even when it occurs on private property on which the speaker trespasses.

### A. ICCI's recordings are protected speech and predicates to speech.

*Telescope* explains recordings are "in a word, speech" when the photos or videos are made to "convey a message." 936 F.3d at 751. That can be established by the maker exercising "editorial control and judgment" over what is in the recording, such as "making decisions about the footage and dialogue to include." *Id.*; *see also* Defs.' Br. 27 (citing *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018), for the proposition that if a recorder selects the "content" of the recording, the recording is expressive).

Defendants' claim that ICCI "does not allege" such facts and thus the recordings do not fall within the heart of the First Amendment, Defs'. Br. 30, blinks reality. ICCI explains a "central function" of the recordings is to "communicat[e] its messag[es]" to others. App.054; R. Doc. 65-3 A8. As a result, ICCI and its members make decisions about what information to include in the recordings, "focus[ing] on the protesters and their statements." *Id.* Indeed, the member declarants explain they record "to document the messages on the banners and signs" to "enabl[e] us to

11

Appellate Case: 25-1750     Page: 16     Date Filed: 09/18/2025 Entry ID: 5559239

demonstrate our positions and passion to others." *E.g.* App.066; R. Doc. 65-3 A20. ICCI's recordings are a "medium for the communication of ideas," the primary test *Telescope* articulates, and made in the way the case law provides can establish that fact. 936 F.3d at 751 The recordings "are a form of speech." *Id.* at 750.

Moreover, even if ICCI's recordings are not equivalent to pure speech, in *Ness* this Court explained that if recording is a "step in the 'speech process,'" it is protected by the First Amendment the same as speech itself. 11 F.4th at 923 (citing *Citizens United*, 558 U.S. at 336–37; *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595–97 (7th Cir. 2012)). The government can no more regulate actual expression than the conduct involved in "creating, distributing, or consuming speech," otherwise it could regulate the use of the printing press and thereby censor books. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792 n.1 (2011).

On this basis, *Ness* continued, a rule prohibiting recording children without permission infringed on First Amendment freedoms because the recorder established she "want[ed] to post those photographs and videos to an internet blog and a Facebook page 'in order to inform the public'" about her concerns with the children's activities. 11 F.4th at 923. Such "acts of taking photographs and recording videos are entitled to First Amendment protection because they are an important stage of the speech process that ends with the dissemination of information about a public controversy." *Id.*

Appellate Case: 25-1750     Page: 17     Date Filed: 09/18/2025 Entry ID: 5559239

Defendants do not dispute the district court's finding that ICCI uses its and its members' recordings to communicate its political views. App.118; R. Doc. 75, at 10. Nor could they. ICCI explains it uses the recordings of its protests in a much more extensive fashion than the plaintiff in *Ness*, showing them at public events, distributing them to traditional media, and posting them on the organizations' website and social media pages. App.054; R. Doc. 65-3 A8. Thus, the recordings are also protected under the First Amendment as predicates to speech.

### B. ICCI's speech does not fall in an exception to the First Amendment.

Defendants claim the First Amendment does not extend to otherwise protected activities during a trespass. Defs.' Br. 31. Yet, *Ness* relied on the fact that the recordings were of "matters of public controversy for dissemination on the internet," not that the images concerned activities in a public park. 11 F.4th at 923. The nature of the recording, not its location, determined the First Amendment applied. Other cases are explicit in holding the First Amendment reaches restrictions on unwanted speech on private property, even when the speaker is engaged in trespass.

Indeed, the case law explains no "tradition withholds protections from nonpublic speech," including unauthorized speech on others' property. *PETA*, 60 F.4th at 821, 822 (holding law prohibiting recording "without authorization" on an "employer's premises" could not be constitutionally applied). Consistent with this, Defendants concede that in *Watchtower Bible & Tract Society of New York, Inc. v.*

13

*Village of Stratton*, the Supreme Court applied the First Amendment to a law "designed to protect the privacy rights" of residents by preventing harmful, unauthorized speech on private property. 536 U.S. 150, 158 (2002). Defendants attempt to distinguish that case because the law acted by requiring speakers to obtain approval before entering property. Defs.' Br. 28–29. But the Court's conclusion that the law restricted protected speech rested on "the important role that door-to-door canvassing and pamphleteering has played in our constitutional tradition of free and open discussion." *Watchtower Bible & Tract Society*, 536 U.S. at 162. The First Amendment must protect against government restrictions of speech on private property. *See id.*; *see also Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 788–90 (5th Cir. 2024) (First Amendment applies to law that "make[s] it unlawful to use a drone to 'capture an image'" of private individuals or property, without their consent, "with the intent to conduct surveillance.").

That a statute regulates speech alongside non-expressive, criminal conduct like "trespass" does not alter the result if "elements target speech." *Kelly*, 9 F.4th at 1228. Put another way, Defendants' statements that the First Amendment does not apply here because the state can regulate a person's access to property, Defs.' Br. 24, ignores a "distinction [] of great constitutional import": the state can regulate "trespass utterly independent of speech," but "criminal offenses that have as an element" speech present constitutional concerns, *Kelly*, 9 F.4th at 1238. There is no

14

"First Amendment right to be exempt from an otherwise generally applicable law," such as one solely regulating non-expressive activities like entry, but that does not authorize "a state's 'differential treatment of individuals who create speech.'" *Id.* (quoting *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1197 (10th Cir. 2017)). The state can regulate through laws aimed exclusively at "breaking and entering[] or document theft," but if a law reaches that regulable conduct and also singles out speech, "we cannot presume it constitutional," rather the law must survive First Amendment scrutiny. *PETA*, 60 F.4th at 824; *see also id.* at 823, 825–26 (similar).

Thus, Defendants' citation of *Kelly* and *Western Watersheds Project* for the notion § 727.8A escapes First Amendment review, Defs.' Br. 25–26, misrepresents those cases. The portion of *Kelly* Defendants cite is in turn citing *Western Watersheds Project*. That section of *Western Watersheds Project*, on which both *Kelly* and Defendants rely, explains whether "trespassing is protected" is not the question. 869 F.3d at 1194. "[T]hat one aspect of the challenged statute[] concerns private property does not defeat the need for First Amendment scrutiny," instead scrutiny is required if the law separately regulates protected speech. *Id.*; *see also Kelly*, 9 F.4th at 1236.

Defendants also err in relying on cases concerning false speech. Based on common law traditions, false speech is excluded from the First Amendment's reach if the speech produces a "legally cognizable harm." *Animal Legal Def. Fund v.*

15

Appellate Case: 25-1750     Page: 20     Date Filed: 09/18/2025 Entry ID: 5559239

*Reynolds*, 8 F.4th 781, 784–85 (8th Cir. 2021). Accordingly, that false expressions do not raise First Amendment concerns when those expressions led to a trespass, a legally cognizable harm, does not suggest the state can regulate recording and trespass. *See id.* at 786. Nothing suggests recordings qualify for a similar carve out from the First Amendment. *Animal Legal Def. Fund v. Herbert*, 263 F. Supp. 3d 1193, 1201–02, 1207–08 (D. Utah 2017) (contrary to Defendants' presentation, distinguishing its treatment of recording and false speech).

Under Defendants' logic, Iowa could freely squelch run-of-the-mill protests by imposing special penalties if a person with a sign accidentally stepped on non-dedicated land. It could also interfere with public discourse by penalizing jaywalking and talking. Every court, up to the Supreme Court, has rejected these claims. Laws like § 727.8A must satisfy First Amendment scrutiny.

**IV. SECTION 727.8A'S APPLICATIONS FAIL SCRUTINY BECAUSE RESTRICTING ICCI'S SPEECH DOES NOT ADVANCE THE LAW'S ENDS.**

Because First Amendment review is required, assuming for the sake of argument § 727.8A need only pass intermediate scrutiny, Defendants must explain how the applications of § 727.8A at issue "serve the Government's" ends in a "direct and effective way." *TikTok Inc. v. Garland*, 604 U.S. 56, 77 (2025). Defendants argue that this Court's facial decision resolved ICCI's as-applied challenge, and the

16

Court should defer to Iowa's judgment. The former is false and the latter misrepresents Defendants' burden of proof, which they do not meet.

### A. The prior facial decision did not resolve tailoring.

Defendants ask this Court to hold that in stating § 727.8A is facially lawful, it established every possibly application of § 727.8A is appropriate. Defs.' Br. 40–42. That is inconsistent with the test for facial review and the analysis this Court performed.

This Court explained a facial inquiry does not require it to consider § 727.8A's panoply of applications because a law is facially valid if there is *a* "set of circumstances" where the law's applications would be valid and the statute's reach is not "unconstitutionally overbroad." *Reynolds*, 89 F.4th at 1079. This Court then held § 727.8A facially lawful because it "penaliz[ed] that subset of trespassers who—by using a camera while trespassing—cause further injury to privacy and property rights." *Id.* at 1081. It was because such a subset existed, without regard to whether the law could be constitutionally applied to others, that this Court concluded it could not strike down § 727.8A as a whole. *Id.*

Consistent with its test, this Court expressly stated it was not evaluating the applications of § 727.8A to ICCI and the other plaintiffs. *Reynolds*, 89 F.4th at 1080. It then authorized them to proceed with an as-applied challenge. *Id.* at 1082.

17

Defendants highlight that in summarizing its holdings the Court stated recording "exacerbate[s]" the harm of trespass, which Defendants assert must mean ICCI's recordings (and all others) do so and thus the law is tailored. Defs.' Br. 41. Even assuming a stray summary remark could expand the other analysis, the Court went on to explain that was not the case. The next paragraph reiterates the Court's statements should *not* be read to "go beyond" the "facial" review it was performing, as they did not consider "Plaintiffs' First Amendment interests." *Reynolds*, 89 F.4th at 1082. To the extent this Court's prior decision speaks to the tailoring inquiry, it is to invite the arguments ICCI now raises.

**B. Section 727.8A's challenged applications are not tailored.**

Thus, for the challenged applications of § 727.8A to be constitutional, Defendants "must demonstrate " "that the regulation will in fact alleviate" the harms the law is said to address. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994) (plurality opinion); *see also* Plf.'s Opening Br. 26–28.

Defendants' central response is to ask to be freed from that burden. They assert that whether a restriction is "effective and appropriate" at achieving the government's ends is "a policy decision to be resolved by legislative action." Defs.' Br. 45 (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 13 (1978) (plurality opinion)). That would improperly convert intermediate scrutiny into something weaker than

18

rational basis review. *Cornelio*, 32 F.4th at 177 (a court cannot "simply accept[] the government's assertions").

Indeed, the authority on which Defendants rely considers a First Amendment challenge against prison regulations, which receive deference inapplicable to other contexts. *Houchins*, 438 U.S. at 8. Moreover, *Houchins* addressed an asserted "right of access" to a prison. *Id.* at 10-11. Accordingly, it concluded First Amendment scrutiny did not apply because the regulation only reached non-expressive conduct, not speech. *Id.* Defendants are relying on a case that did not and could not apply heightened scrutiny to claim they meet their burden here.

Defendants also return to their crutch of insisting this issue has already been resolved. They point to the district court's statements that recordings "exacerbate[] privacy and property intrusions by creating a permanent record." Defs.' Br. 45 (quoting App.122, R. Doc. 75 at 14). The district court's only support for that statement was this Court's prior decision. App.122, R. Doc. 75 at 14 (citing *Reynolds*, 89 F.4th at 1082). As explained above, that improperly turns a narrow statement that § 727.8A survives facially into a broad pronouncement that this law can be applied to any recording.

Defendants' focus on dodging the issue is of necessity because, although it is their burden to establish the opposite, based on these facts ICCI's recordings do not harm privacy or property. Those recordings cannot infringe on the privacy of people

Appellate Case: 25-1750    Page: 24    Date Filed: 09/18/2025 Entry ID: 5559239

accidentally captured by its videos, as ICCI only seeks to protect recording in areas where people can freely come and go. There is no expectation activities in those areas will be kept private, such as being free from recording. Plf.'s Opening Br. 32–33. Moreover, the only recordings at issue here are where the property owner does not object to ICCI's photos or videos, but it and its members' continued presence. App.088; R. Doc. 69-1 ¶ 4; *see also* Iowa Code § 716.7(2)(a)(2) (empowering property owners to prohibit unwanted recording through verbal instructions and signs had they wished to address the recording).

Defendants' authority explains the state cannot restrict recording to protect privacy where the subjects recognize recording is possible, unless the recording would have "invaded in an essentially intolerable manner." *Project Veritas*, 982 F.3d at 839. The record here shows these recorded individuals have chosen to tolerate the recordings.

Defendants insist that because recordings can be stored or manipulated, the recorded's choice is irrelevant. Defs.' Br. 49. But, that argument reaches too far. All recordings can be stored or manipulated. Defendants' argument would empower the state to prohibit recordings to protect privacy and property even if the subject requests the recording. Nor does the fact that these recordings occur following a trespass alter the analysis. *See* Defs.' Br. 45–46. If the property owner did not object to the recording in the first instance, it is not reasonable to conclude they wish to be

20

Appellate Case: 25-1750    Page: 25    Date Filed: 09/18/2025 Entry ID: 5559239

protected against the future consequences of the recording. Indeed, neither Defendants nor their amici have presented anything to suggest concerns over storage or manipulation have ever arisen with recordings like those at issue here.

Defendants' own case confirms concerns over recordings' storage and manipulation are not per se sufficient to regulate recordings, even recordings following a trespass. Storage and manipulation concerns only sufficed to justify a law restricting recordings in private, open areas—such as cafes—where the recordings were made in "secret," because the subjects could have operated with the "expectation" they were free from surveillance. *Project Veritas v. Schmidt ("Schmidt")*, 125 F.4th 929, 954–56 (9th Cir. 2025) (en banc). The interest in protecting from recordings' present or future intrusion only exists if people could not protect themselves. All parties admit that ICCI records in an obvious manner. App.091; R. Doc. 69-1 ¶ 11. Thus, there is no concern people's choices to remain in areas where ICCI was recording or property owners' decisions not to object to the recordings were uninformed.

Defendants also argue that because § 727.8A does not require consent to record, that property owners did not object to the recordings should not come into play. Defs.' Br. 47. That misunderstands the nature of the tailoring inquiry in an as-applied challenge. Unlike an overbreadth argument, an as-applied challenge is not

21

Appellate Case: 25-1750    Page: 26    Date Filed: 09/18/2025 Entry ID: 5559239

resolved by determining the law's scope, but based on whether the applications can be said to advance the state's aims. *E.g.*, *Reynolds*, 89 F.4th at 1079–80.

Consistent with the authority discussed above, the Fourth and Seventh Circuits have held laws cannot be said to protect privacy and property when they prohibit recordings of items and activities the owners have not sought to keep from public view. *See* Plf.'s Opening Br. 34–37 (discussing *PETA*, 60 F.4th at 833; *ACLU of Ill.*, 679 F.3d at 605–07). Because those courts' tailoring analysis turned on the fact that privacy and property "interests are not at issue" in such circumstances, *ACLU of Ill.*, 679 F.3d at 605, Defendants' (questionable) effort to distinguish these cases as about "consent to record" statutes, Defs.' Br. 47, has no traction. Affirmative consent did not come into play. That people did not work to protect the material was dispositive.

Defendants' authority says no different. In holding the government can elect to stop recordings at its prisons, it offers no basis to conclude the government can criminalize recording on *others'* property where the owners *do not object*. *Rice v. Kempker*, 374 F.3d 675, 678–79 (8th Cir. 2004).

In sum, Defendants ask this Court to hold ICCI's recordings can be regulated without Defendants demonstrating the recordings will produce any harm or are even similar to what others have been allowed to regulate. *But see Turner Broad. Sys.*, 512 U.S. at 664. The Court should not accept Defendants' request that it abandon

22

the test for intermediate scrutiny. Moreover, to hold these applications of § 727.8A tailored would require the Court to overlook long-standing common law principles and split the circuits.[1]

**V.    SECTION 727.8A'S APPLICTIONS FAIL SCRUTINY BECAUSE THE STATE DID NOT PRODUCE EVIDENCE THE LAW WAS WARRANTED.**

Even had Defendants provided reasons for these applications of § 727.8A, the law would still be unconstitutional as applied because Defendants are unable to produce evidence to justify a law that reaches ICCI. Defendants concede that under intermediate scrutiny the government must produce "[e]vidence" showing there was "a real need" for this regulation of speech. Defs.' Br. 50–51. Defendants spend the vast majority of their time arguing that the evidence need not have been part of the legislative record, Defs.' Br. 51–58, because they cannot even faint at that showing.

---

[1] To the extent the Court considers arguments not raised by Defendants but their amici, they confirm these applications cannot stand. Amici argue § 727.8A is tailored because the trespass law has not "been sufficient to deter" ICCI's desire to protest, record, and obtain "media coverage." Amicus Br. 17. But a law cannot be tailored to suppress speech. The entire point of the tailoring analysis is to "guard against an impermissible desire to censor." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). Amici's other additional arguments to support § 727.8A, such as protecting biosecurity, only speak to the law's applications on closed property. Their case law acknowledges that when "a commercial property is *not* open to the public" there are "expectation[s] of privacy" that do *not* "exist" on the open property at issue here. *United States v. Long*, 797 F.3d 558, 565 (8th Cir. 2015).

Appellate Case: 25-1750    Page: 28    Date Filed: 09/18/2025 Entry ID: 5559239

That is wrong, but even assuming otherwise, Defendants' evidence is insufficient to justify these applications of § 727.8A.

Defendants only distinguish ICCI's Supreme Court authority looking to the legislative record for evidence supporting a speech restriction by noting facts impacted the "intensi[ty]" of those cases' records, without disputing that a legislative record was required. *Id.* at 53–55. The one instance Defendants point to where the Supreme Court relied on "[p]ublic reporting" concerned examples of that reporting *incorporated into the legislative record. TikTok*, 604 U.S. at 73–74 & n.3. Eighth Circuit authority Defendants cite also upheld laws based on the legislative record. *Jake's, Ltd., Inc. v. City of Coates*, 284 F.3d 884, 888 (8th Cir. 2002); *Doe v. City of Minneapolis*, 898 F.2d 612, 615 (8th Cir. 1990).

Under this precedent, § 727.8A's applications fall. Defendants offer nothing that would allow the applications to survive. They cite two articles that they do not contend were part of the legislative record. Defs.' Br. 56. They entirely abandon their prior references to the legislative history, as those prove nothing. *See* Plf.'s Opening Br. 42–43.

Defendants cite *Missouri Republican Party v. Lamb*, 270 F.3d 567 (8th Cir. 2001), and *Association of Community Organizations for Reform Now v. St. Louis County*, 930 F.2d 591 (8th Cir. 1991), for the notion that they can point to other evidence to support the law. Defs.' Br. 56. Those cases pre-date all or nearly all of

24

the Supreme Court authority ICCI provided establishing a legislative record is required. Assuming they remain good law, the record on which those decisions relied was substantial. *Lamb*, 270 F.3d at 570 (pointing to record from Federal Election Commission); *Ass'n of Cmty. Orgs.*, 930 F.2d at 593 (pointing to the testimony of multiple experts, videos, anecdotes).[2]

Thus, if Defendants could rely on what they drag up from the internet for this litigation, their showing is not enough. Defendants cite to two articles on the internet. *See* Defs.' Br. 56. Those articles do not discuss the type of speech ICCI seeks to protect, but rather trespass on closed property. Plf.'s Opening Br. 43–44. Further, Defendants admit the articles only "identified two examples of trespass and recording." Defs.' Br. 56. They do not recount that the recordings produced *any* harm.

The Supreme Court's controlling statements explain the evidence must be "substantial for a legislative determination." *TikTok*, 604 U.S. at 78. They also provide the record must show "measures that burden substantially less speech would fail to achieve the government's interests." *McCullen*, 573 U.S. at 495. Two

---

[2] Defendants also cite *Sisney v. Kaemingk*, 15 F.4th 1181 (8th Cir. 2021), to suggest they need no evidence whatsoever. That case relied on "common sense" to consider whether there was a "rational connection between the prison regulation and the legitimate governmental interest." *Id.* at 1190–91. In other words, it applied an inapplicably lenient standard.

25

tangential internet posts cannot be called substantial for any purpose. Moreover, even assuming the articles are evidence of harm from recording, they demonstrate that Iowa could have addressed that issue in a substantially narrower way. It could have passed a law that only regulated speech on closed property and not reached ICCI's expressions at issue. The Supreme Court has explained that where the state can show a problem arises only in one area, that record proves it "hardly a narrowly tailored solution" to apply the restriction everywhere. *McCullen*, 573 U.S. at 493.

Once Defendants concede, as they must, that evidence is required, they cannot prevail. The case law establishes there must be evidence supporting the applications in the legislative record, and Defendants provide none. What they can produce is so paltry they can locate no comparison, and relying on that evidence cannot be reconciled with the governing case law. The applications of § 727.8A's at issue fail intermediate scrutiny.

## VI. AT THE LEAST, REMAND IS REQUIRED.

Even if ICCI were not entitled to relief on this record, reversal is still required. ICCI should be provided the opportunity to prove strict scrutiny was warranted. As Defendants recognize, ICCI reserved this argument, including stating it required "discovery later" so that it could "argue for strict scrutiny." R. Doc. 65-1, at 13 n.3. Defendants' suggestion that ICCI was required to further develop the argument,

26

Appellate Case: 25-1750     Page: 31     Date Filed: 09/18/2025 Entry ID: 5559239

Defs.' Br. 36, when the scheduling order prevented ICCI's discovery makes no sense, *see* App.035–36; R. Doc. 59, at 2–3.

Seemingly recognizing as much, Defendants contend evidence cannot establish § 727.8A warrants strict scrutiny. Defs.' Br. 37–38. That is not the law. "[P]recedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech" that are subject to strict scrutiny, laws "adopted by the government because of disagreement with the message the speech conveys." *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (cleaned up). That inquiry turns on whether the state "legislated based on hostility—or favoritism—towards the underlying message expressed." *Schmidt,* 125 F.4th at 952 (cleaned up).

Defendants return to their favorite fallback, that this Court must have resolved this issue in its prior decision. Once again, the decision is expressly to the contrary. It explained that it did "not look beyond the text of the statute." *Reynolds*, 89 F.4th at 1080. Nor could it have, as discovery had (and has) not occurred.

## VII.  CONCLUSION.

The Court should order entry for judgment in favor of ICCI. ICCI has standing and a ripe claim, and § 727.8A cannot survive intermediate scrutiny as applied to ICCI's speech at issue. In the alternative, the Court should reverse and remand for the development of the appropriate record.

27

September 16, 2025                    Respectfully submitted,

                                     /s/ David S. Muraskin
                                     David S. Muraskin
                                     Holly Bainbridge
                                     FarmSTAND
                                     712 H Street NE, Suite 2534
                                     Washington, DC 20002
                                     (267) 761-8448
                                     (202) 595-8816
                                     david@farmstand.org
                                     holly@farmstand.org
                                     *Counsel for Plaintiff-Appellant*

Appellate Case: 25-1750    Page: 33    Date Filed: 09/18/2025 Entry ID: 5559239

# <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments): this brief or other document contains 6,490 words.

This brief or other document complies with the typeface and type style requirements because: this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman 14-point font.

Date: September 16, 2025

Respectfully submitted,

<u>/s/ David S. Muraskin</u>
David S. Muraskin
FarmSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(267) 761-8448
david@farmstand.org
*Counsel for Plaintiff-Appellant*

29

Appellate Case: 25-1750   Page: 34   Date Filed: 09/18/2025 Entry ID: 5559239

# CERTIFICATE OF COMPLIANCE WITH VIRUS SCAN

I certify this document has been scanned for viruses and is virus-free.

Date: September 16, 2025

Respectfully submitted,

/s/ David S. Muraskin
David S. Muraskin
FarmSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(267) 761-8448
david@farmstand.org
*Counsel for Plaintiff-Appellant*

30

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the September 16, 2025, the foregoing

document was served on all parties or their counsel of record through CM/ECF

system.


Date: September 16, 2025

Respectfully submitted,

/s/ David S. Muraskin
David S. Muraskin
FarmSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(267) 761-8448
david@farmstand.org
*Counsel for Plaintiff-Appellant*

Appellate Case: 25-1750     Page: 36     Date Filed: 09/18/2025 Entry ID: 5559239